639 S.E.2d 770

**In re CHRISTINA W., Sissy W., and Lisa W.**

**No. 33133.**

Supreme Court of Appeals of West Virginia.

Submitted: Oct. 24, 2006.

Decided: Nov. 29, 2006.

Darrell V. McGraw, Jr., Attorney General, Angela Alexander Ash, Assistant Attorney General, Princeton, for the Appellant, State of West Virginia Department of Health and Human Resources.

Julie Lynch, Mary Ellen Griffith, Child-Law Services, Inc., Princeton, for the Appellee, Guardians ad Litem.

DAVIS, Chief Justice.

This abuse and neglect case raises the legal question of whether a guardian ad litem owes a duty of confidentiality to his or her infant charge such that, where the infant demands confidentiality with respect to information regarding abuse that the infant discloses to the guardian ad litem, the guardian may be justified in not informing a circuit or family court of the abuse alleged by the infant.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Testimony presented in this case indicates that on September 17, 2005, a domestic dispute erupted between Linda H. and her boyfriend James B.[1] The dispute allegedly arose from Linda's anger that James had given attention and gifts to Linda's oldest daughter, Christina W., that Linda had desired for herself.[2] During the ensuing altercation,

---

1. "In this case involving sensitive facts, we adhere to our usual practice adopted in other such cases and refer to the parties by their last initials rather than by their complete surnames." *In re Emily,* 208 W.Va. 325, 329 n. 1, 540 S.E.2d 542, 546 n. 1 (2000) (citations omitted).

2. Christina was fifteen years old at this time. She turned sixteen in March 2006.

James began to choke Linda. According to Linda, Christina came to her mother's aid by hitting James with a broom while yelling, "let go of my mother or I will tell on you for touching me." Deputy E.P. Parks, of the Mercer County Sheriff's Department, child protective service workers, and Angela Robbins, an in-home service provider assigned to the family, all responded to this incident. Christina W. disclosed to Deputy Parks and Angela Robbins that James B. had been touching her inappropriately. However, Christina later recanted these statements.

Linda was given the option of leaving James in order to maintain custody of her children. Linda declined the offer and her three daughters, Christina W., Sissy W. and Lisa W. were removed from the home.[3] On September 21, 2005, a petition for abuse and neglect was filed based on domestic violence and sexual misconduct by James. A preliminary hearing was held on September 30, 2005, in the Circuit Court of Mercer County. At this hearing, the circuit court found that the children remained at risk due to domestic violence, and indicated that the sexual misconduct allegations required additional investigation.[4] At the time of the preliminary hearing, Christina continued to deny that inappropriate sexual conduct had occurred, and she expressed her desire to visit with her mother and James.[5]

On October 25, 2005, a multi-disciplinary treatment team (hereinafter "MDT") meeting was held. Among those present at the meeting was Mary Ellen Griffith, who had been appointed guardian ad litem for the children. The MDT agreed to a non-custodial improvement period that would include various services for Linda and James,[6] and would also include weekly daytime unsupervised visits between the three girls and both Linda and James.

Later that same day, Ms. Griffith met with Christina and her sisters at the Paul Miller Shelter, which is where the girls had been placed. During the visit, Ms. Griffith spoke privately with Christina and questioned her about her prior allegations of sexual misconduct. Ms. Griffith states that Christina first questioned her regarding the attorney/client privilege and sought assurances that any information she revealed about sexual misconduct by James would not be shared. Christina then advised Ms. Griffith that James had in fact touched her inappropriately. However, Christina reported that she was "okay" and expressed her desire to go home to her mother. She further stated that she would not testify about James' abusive conduct.[7]

At an adjudicatory hearing on November 18, 2005, Linda and James stipulated to the allegations of domestic violence contained in the abuse and neglect petition. The children were adjudged neglected. A post-adjudicatory improvement period was granted to Linda and James. The improvement period was agreed to by all parties, including Ms. Griffith. The goal of the improvement period was reunification of all three girls with Linda and James, and it included unsupervised visits with both adults. The court set the matter for review on February 17, 2006.

In January 2006, prior to a scheduled MDT meeting, Ms. Griffith was advised by Stacy Cockerham, a case-worker, that

---

3. There are no issues involving Sissy W. and Lisa W. presently before this Court.

4. According to the State, the parties to this case have indicated that the guardian ad litem appointed for the children, Mary Ellen Griffith, was ordered to investigate the allegations. The State acknowledges, however, that such a directive is not clearly expressed in the circuit court's order.

5. An amended petition was also filed adding the girls' father, Larry W., and outlining the domestic violence in more detail. A motion to terminate the parental rights of Larry W., based upon his incarceration for sexually assaulting a child who is not a party to the instant action, has been taken under advisement by the circuit court. No issues involving Larry W. are presently before this Court.

6. The services included in-home parenting instruction for Linda, participation in anger management counseling, a victim support group for Linda and a batterer's intervention program for James.

7. Ms. Griffith asserts that at the MDT meeting earlier that day she requested a psychological evaluation for Christina. Accordingly, when she later met with Christina, she encouraged Christina to discuss James' abuse with a counselor. According to Ms. Griffith, as of February 13, 2006, the psychological evaluation had not been completed.

Christina had disclosed to her James' sexual misconduct, and Christina had also revealed the abuse to Nancy Silvazi, a foster-care agency worker.[8] Christina also informed these two women of her prior disclosure of the abuse to her guardian ad litem, Ms. Griffith.[9] Thereafter, the Department of Health and Human Resources (hereinafter "DHHR") petitioned the circuit court to remove Ms. Griffith as guardian ad litem due to conflict. Following a hearing on February 17, 2006, the circuit court denied the DHHR's motion to remove Ms. Griffith. The circuit court found that the lawyer/client privilege is applicable to the relationship between a child and his or her guardian ad litem, and denied the DHHR's motion to remove Ms. Griffith as guardian ad litem. The DHHR then filed this appeal seeking reversal of the circuit court's order.[10]

## II.

## STANDARD OF REVIEW

In this case we are asked to review the circuit court's ruling on the DHHR's motion to remove Ms. Griffith. With respect to the disqualification of a lawyer, we have previously held that

" '[a] circuit court, upon motion of a party, by its inherent power to do what is reasonably necessary for the administration of justice, may disqualify a lawyer from a case because the lawyer's representation in the case presents a conflict of interest where the conflict is such as clearly to call in question the fair or efficient administration of justice. Such motion should be viewed with extreme caution because of the interference with the lawyer-client relationship.' Syl. Pt. 1, *Garlow v. Zakaib*, 186 W.Va. 457, 413 S.E.2d 112 (1991)." Syllabus point 2, *Musick v. Musick*, 192 W.Va. 527, 453 S.E.2d 361 (1994).

Syl. pt. 3, *State ex rel. Michael A.P. v. Miller*, 207 W.Va. 114, 529 S.E.2d 354 (2000). In reviewing the circuit court's ruling on this matter, we are mindful that

[i]n reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. pt. 2, *Walker v. West Virginia Ethics Comm'n*, 201 W.Va. 108, 492 S.E.2d 167 (1997). In this case, the circuit court's decision was based upon a legal determination. Therefore, we apply a de novo standard. *See* Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving the interpretation of a statute, we apply a *de novo* standard of review.").

8. Upon learning of the renewed allegations of sexual misconduct, the Department of Health and Human Resources immediately stopped unsupervised visits with James.

9. At a subsequent MDT meeting, Linda and James were confronted with Christina's renewed statements of sexual misconduct. Both of them denied the allegations, and Linda stated that she would relinquish her parental rights to all three girls.

10. On August 21, 2006, Ms. Griffith was appointed Family Court Judge for McDowell and Mercer Counties. Obviously, as a result of this appointment, Ms. Griffith may no longer serve as guardian ad litem in this case. Nevertheless, because the legal issue herein raised is capable of repetition, we may address this technically moot issue. *See* Syl. pt. 1, *Israel by Israel v. West Virginia Secondary Schs. Activities Comm'n*, 182 W.Va. 454, 388 S.E.2d 480 (1989) ("Three factors to be considered in deciding whether to address technically moot issues are as follows: first, the court will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief; second, while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for the future guidance of the bar and of the public; and third, issues which may be repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting and determinate nature, may appropriately be decided."); Syl. pt. 1, *State ex rel. M.C.H. v. Kinder*, 173 W.Va. 387, 317 S.E.2d 150 (1984) ("A case is not rendered moot even though a party to the litigation has had a change in status such that he no longer has a legally cognizable interest in the litigation or the issues have lost their adversarial vitality, if such issues are capable of repetition and yet will evade review.").

## III.

## DISCUSSION

■ The narrow legal question we are asked to resolve in this case is whether a lawyer appointed to serve as guardian ad litem to a child involved in abuse and neglect proceedings owes a duty of confidentiality to the child such that the guardian may not disclose to the presiding court, without the consent of his or her child client, revelations from the child disclosing abuse. To answer this question, we first examine the nature of a lawyer's role in serving as guardian ad litem.

Rule 3(i) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings defines "[g]uardian ad litem" as "the attorney appointed to *represent* the child." (Emphasis added). This definition, stating that the guardian is an "attorney" who is to "represent the child," indicates that the role of guardian ad litem is much the same as that of a lawyer representing a client.[11] *See, e.g.*, Black's Law Dictionary 1303–04 (7th ed.1999) (defining "representation," in part, as "[t]he act or an instance of standing for or acting on behalf of another, esp. by a lawyer on behalf of a client").[12] The conclusion that a guardian ad litem serves in a capacity very similar to that of a lawyer representing a client is further supported by W. Va.Code § 49–6–2(a) (2006) (Supp.2006), which provides in relevant part that "[i]n any proceeding under the provisions of this article, the child ... shall have the right *to be represented by counsel* at every stage of the proceedings .... Counsel of the child shall be appointed in the initial order." (Emphasis added). *See also In re Tyler D.*, 213 W.Va. 149, 160, 578 S.E.2d 343, 354 (2003) (commenting that "children [in abuse and neglect cases] are entitled to effective representation through a guardian ad litem"); *In re Christina L.*, 194 W.Va. 446, 453, 460 S.E.2d 692, 699 (1995) ("[T]he circuit court may not impose unreasonable limitations upon the function of guardians ad litem in representing their clients in accord with the traditions of the adversarial fact-finding process."); *In re Scottie D.*, 185 W.Va. 191, 198, 406 S.E.2d 214, 221 (1991) ("[A] guardian *ad litem* has a duty to represent the child(ren) to whom he or she has been appointed, as effectively as if the guardian *ad litem* were in a normal lawyer-client relationship.").[13]

Likewise, many of the duties required by the "GUIDELINES FOR GUARDIANS *AD LITEM* IN ABUSE AND NEGLECT CASES" established by this Court and set out in Appendix A of *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993), are those that would be performed by a lawyer representing a client. For example, Rules 8 through 22 appear under the heading *"Preparation for and Representation at Adjudicatory and Dispositional Hearing"* and require guardians ad litem to perform a wide variety of lawyerly duties. For example,

---

**11.** Rule 52(g) of the Rules of Procedure for Child Abuse and Neglect Proceedings similarly refers to a guardian ad litem as the *attorney* for the child[ren]:

> *Continued duties of the child's attorney.* The appointment of a CASA representative shall not in any way abrogate the duties and responsibilities imposed by law on the *attorney for the child[ren]*. The duties and responsibilities of *a child's guardian ad litem* shall continue until such child has a permanent placement, and the guardian ad litem shall not be relieved of his responsibilities until such permanent placement has been achieved.

(second and third emphasis added).

**12.** *Cf.* Syl. pt. 1, *Miners in Gen. Group v. Hix*, 123 W.Va. 637, 17 S.E.2d 810 (1941), *overruled on other grounds by Lee–Norse Co. v. Rutledge*, 170 W.Va. 162, 291 S.E.2d 477 (1982) ("In the absence of any definition of the intended meaning of words or terms used in a legislative enact-

ment, they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in the connection in which they are used.").

**13.** We also pointed out in Syllabus point 3 of *State ex rel. Amy M. v. Kaufman*, 196 W.Va. 251, 470 S.E.2d 205 (1996),

> There is a clear legislative directive that guardians ad litem ... be given an opportunity to advocate for their clients in child abuse or neglect proceedings. West Virginia Code § 49–6–5(a) (1995) states that the circuit court shall give both the petitioner and respondents an opportunity to be heard when proceeding to the disposition of the case. This right must be understood to mean that the circuit court may not impose unreasonable limitations upon the function of guardians ad litem in representing their clients in accord with the traditions of the adversarial fact-finding process.

several of the rules require a guardian ad litem to

8. Pursue the discovery of evidence, formal and informal.

9. File timely and appropriate written motions such as motions for status conference, prompt hearing, evidentiary purpose, psychological examination, home study, and development and neurological study.

. . . .

13. Maintain adequate records of documents filed in the case and of conversations with the client and potential witnesses.

. . . .

16. Subpoena witnesses for hearings or otherwise prepare testimony or cross-examination of witnesses and ensure that relevant material is introduced.

190 W.Va. at 41, 435 S.E.2d at 179.

 Due to the legal nature of a significant portion of the duties of a guardian ad litem, we believe that, as a general rule, the West Virginia Rules of Professional Conduct, which govern the conduct of lawyers practicing within the State of West Virginia, should apply to the conduct of guardians ad litem.[14] Accordingly, we now hold that, because many aspects of a guardian ad litem's representation of a child in an abuse and neglect proceeding comprise duties that are performed by a lawyer on behalf of a client, the rules of professional conduct generally apply to that representation.

We must emphasize, however, that this is merely a general rule. While it forms a necessary part of our analysis, it does not answer the specific question herein raised. The question we must resolve today is whether a guardian ad litem appointed in an abuse and neglect case owes a duty of confidentiality to the child he or she is represent-

ing such that the guardian ad litem is prohibited from disclosing to the presiding court information regarding abuse that the child wishes to remain confidential.

Ms. Griffith claims she was bound to keep her client's confidences by Rule 1.6(a) of the Rules of Professional Conduct,[15] which states in relevant part, that "[a] lawyer shall not reveal information relating to representation of a client unless the client consents after consultation . . . ." Ms. Griffith urges that this confidentiality in the relationship between a guardian ad litem and an infant furthers the compelling need of the child to have a guardian ad litem with whom he or she can freely communicate. However, we believe that the strict adherence to this rule advocated by Ms. Griffith fails to fully appreciate the complex nature of abuse and neglect proceedings, as well as the multi-faceted duties of guardians ad litem. Indeed, the obligations of a guardian ad litem extend much farther than those anticipated by the typical lawyer/client relationship.

 The predominant charge to lawyers representing children involved in abuse and neglect cases is that the best interests of the children is of paramount concern. *In re Amber Leigh J.*, 216 W.Va. 266, 272, 607 S.E.2d 372, 378 (2004) (per curiam) ("Of course, [in abuse and neglect cases] the best interests of the child are paramount." (internal quotations and citation omitted)); Syl. pt. 3, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) ("[T]he primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children."); *In re Jeffrey R.L.*, 190 W.Va. 24, 32, 435 S.E.2d 162, 170 (same); *Michael K.T. v. Tina L.T.*, 182 W.Va. 399, 405, 387 S.E.2d 866, 872 (1989) ("[T]he best

**14.** The *In re Jeffrey R.L.* Court commented that the guidelines for guardians ad litem adopted therein

encompass some of the basic principles found under our *Rules of Professional Conduct*. Specifically, Rule 1.1 requires an attorney to "provide competent representation to a client" which "requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Furthermore, Rule 1.3 requires a lawyer to "act with reasonable diligence and promptness in representing a client." We believe the guidelines proposed

for guardians ad litem essentially reflect these basic rules of practice by which each attorney is bound.

190 W.Va. 24, 39, 435 S.E.2d 162, 177.

**15.** Because the parties have briefed this case in the context of the Rules of Professional Conduct, our analysis is based upon those rules. We note, however, that the exception to the confidentiality rule for child abuse and neglect cases established in this opinion applies equally to the attorney/client privilege.

interests of the child is the polar star by which decisions must be made which affect children."). Thus, guardians ad litem serve a dual role. In addition to serving as an advocate for the child[ren], they must also fulfil their duty to fully inform themselves of the child[ren]'s circumstances and determine and recommend the outcome that best satisfies the child[ren]'s best interests. This Court recently alluded to the dual capacity of a guardian ad litem in the case of *In re Elizabeth A.*, 217 W.Va. 197, 204, 617 S.E.2d 547, 554 (2005) (per curiam), wherein we observed that "[d]uring the proceedings in an abuse and neglect case, a guardian ad litem is charged with the duty to faithfully represent the interests of the child *and* effectively advocate on the child's behalf." (Emphasis added). This dual role was likewise recognized in Syllabus point 5 of *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162:

> Each child in an abuse and neglect case is entitled to effective representation of counsel. To further that goal, *W. Va.Code*, 49–6–2(a) [1992] mandates that a child has a right to be represented by counsel in every stage of abuse and neglect proceedings. Furthermore, Rule XIII of the *West Virginia Rules for Trial Courts of Record* [16] provides that a guardian *ad litem* shall make a full and independent investigation of the facts involved in the proceeding, and shall make his or her recommendations

known to the court. Rules 1.1 and 1.3 of the *West Virginia Rules of Professional Conduct,* respectively, require an attorney to provide competent representation to a client, and to act with reasonable diligence and promptness in representing a client. The Guidelines for Guardians *Ad Litem* in Abuse and Neglect cases, which are adopted in this opinion and attached as Appendix A, are in harmony with the applicable provisions of the *West Virginia Code,* the *West Virginia Rules for Trial Courts of Record,* and the *West Virginia Rules of Professional Conduct,* and provide attorneys who serve as guardians ad litem with direction as to their duties in representing the best interests of the children for whom they are appointed.

(Footnote added).

Thus, the role of guardian ad litem extends beyond that of an advocate and encompasses also a duty to safeguard the best interests of the child[ren] with whose representation the guardian has been charged. Bearing this in mind, we now consider how the confidentiality provision of Rule 1.6 of the Rules of Professional Conduct impacts upon this role.[17]

Ms. Griffith recognizes that children represented by guardians ad litem are under the disability of age. She contends, however, that the West Virginia Rules of Professional

---

16. We pause briefly to note that the Trial Court Rules for Trial Courts of Record have been replaced by the West Virginia Trial Court Rules. Rule 21 of the Trial Court Rules contains guidelines for Guardians Ad Litem; however, Rule 21.01 expressly states that it "does not apply to guardians ad litem appointed in abuse and neglect proceedings." Nevertheless, this Court has continued to follow the principles set out in Syllabus point 5 of *In re Jeffrey R.L.,* including the mandate contained therein that "a guardian ad litem shall make a full and independent investigation of the facts involved in the proceeding, and shall make his or her recommendations known to the court." *See, e.g., In re Elizabeth A.,* 217 W.Va. 197, 617 S.E.2d 547 (2005) (per curiam) (reiterating relevant portion of Syllabus point 5 of *In re Jeffrey R.L.* as a Syllabus point); *In re Emily,* 208 W.Va. 325, 339–40, 540 S.E.2d 542, 557 (referring to this Court's "clear and oft-repeated admonitions that ... guardians are duty-bound to provide guidance to the tribunal charged with determining the subject child(ren)'s ultimate fate" (footnotes omitted)).

17. Rule 1.6 of the West Virginia Rules of Professional Conduct states:

> (a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraph (b).
>
> (b) A lawyer may reveal such information to the extent the lawyer reasonably believes necessary:
>
> (1) to prevent the client from committing a criminal act; or
>
> (2) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of a client.

Conduct and existing case law recognize the ability of competent children to direct their legal representation, which includes, by implication, the competent child's assertion of confidentiality.

Rule 1.14 of the West Virginia Rules of Professional Conduct addresses a lawyer's responsibility to a client who is under a disability, including an age disability, and states in relevant part:

> (a) When a client's ability to make adequately considered decisions in connection with the representation is impaired, whether because of *minority,* mental disability or for some other reason, the lawyer shall, as far as reasonably possible, maintain a normal client-lawyer relationship with the client.

(Emphasis added). The comment to Rule 1.14 elaborates, in part, that

> The normal client-lawyer relationship is based on the assumption that the client, when properly advised and assisted, is capable of making decisions about important matters. When the client is a minor or suffers from a mental disorder or disability, however, maintaining the ordinary client-lawyer relationship may not be possible in all respects. In particular, an incapacitated person may have no power to make legally binding decisions. Nevertheless, a client lacking legal competence often has the ability to understand, deliberate upon, and reach conclusions about matters affecting the client's own well being. Furthermore, to an increasing extent the law recognizes intermediate degrees of competence. *For example, children as young as five or six years of age, and certainly those of ten or twelve, are regarded as having opinions that are entitled to weight in legal proceedings concerning their custody* . . . .

(Emphasis added). Importantly, however, the lawyer's duty under Rule 1.14 to "maintain a normal client-lawyer relationship with the client" extends only "as far as reasonably possible." Furthermore, the recognition in the comment to that rule that "to an increasing extent the law recognizes intermediate degrees of competence" is tempered by the clarification that a child's opinion as to his or her custody is "entitled to *weight* in legal

proceedings." (Emphasis added). Thus, while the child's opinions are to be given *consideration* where the child has demonstrated an adequate level of competency, there is no requirement that the child's wishes govern. As this Court explained in *In re Lindsey C.,*

> Obviously, those recommendations may or may not be identical to those the child would make to the court, left entirely to his or her own choices. However, in the case of a child, justice is clearly best served by requiring that counsel and the court exercise their respective best judgment in all aspects of the case, and that the court have the benefit of counsel's candid and independent assistance in ascertaining the best interests of that child.

196 W.Va. 395, 409, 473 S.E.2d 110, 124 (1995). Clearly, though, the recognition that a child's opinions are entitled to be weighed in the course of the guardian ad litem's representation in no way minimizes the guardian's ultimate duty to safeguard the child's best interests. *See, e.g., In re Elizabeth A.,* 217 W.Va. 197, 205, 617 S.E.2d 547, 555 (2005) (finding that "[t]he guardian ad litem and DHHR were not given a meaningful opportunity to introduce substantive evidence or obtain additional testing necessary to determine the best interests of the two children whom the guardian ad litem was appointed to serve") (footnote omitted). Where a child's wishes are adverse to the course that serves the child's best interests, they simply cannot be followed. *See In re Lindsey C.,* 196 W.Va. 395, 409, 473 S.E.2d 110, 124 ("As we indicated in *Jeffrey R.L.,* counsel for the child is expected to pursue that central purpose [to ascertain and serve the best interests of the child] even when his or her client, the child, may have a different view of what is in the child's best interests."). Nowhere is this reasoning demonstrated more clearly than in a situation where the child's desired course would expose the child to a high risk of probable harm.

 Furthermore, in addition to weighing a child's opinion (such as the desire for confidentiality as issue in this case) against the child's best interests, a guardian ad litem must also balance the child's desire

for confidentiality with the guardian's duties to the court. As noted above, a guardian ad litem "*shall* make a full and independent investigation of the facts involved in the proceeding, and *shall* make his or her recommendations known to the court." Syl. pt. 5, in part, *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162.[18] Accordingly, we now hold that while a guardian ad litem owes a duty of confidentiality to the child[ren] he or she represents in child abuse and neglect proceedings, this duty is not absolute. Where honoring the duty of confidentiality would result in the child[ren]'s exposure to a high risk of probable harm, the guardian ad litem must make a disclosure to the presiding court in order to safeguard the best interests of the child[ren].[19]

In the instant case, after Christina had recanted her initial complaint that her mother's boyfriend, James B., had been touching her inappropriately in a sexual manner, Christina W. revealed to Ms. Griffith that such touching had in fact occurred. Although Christina W. demanded that this information remain confidential, Ms. Griffith's failure to disclose this information to the presiding court resulted in Christina having unsupervised visitation with James B. Until such time as the allegations of sexual abuse could be properly investigated, unsupervised visitation between Christina W. and James B. was most certainly not in Christina's best interest.

In this appeal, DHHR sought to have Ms. Griffith removed as guardian ad litem in this matter. However, the circuit court found that there was no need to remove her because the confidential information, Christina W.'s allegations of sexual abuse, had been brought to the court's attention, and thus, the conflict had been removed. Prior to this opinion, the duties of a lawyer placed in the situation in which Ms. Griffith found herself were not clear. Insofar as this opinion makes clear a lawyer's duties with respect to disclosure of confidential information, and because the court was ultimately made aware of Christine W.'s allegations of abuse, we agree with the circuit court and see no need to remove Ms. Griffith.

## IV.

## CONCLUSION

While we disagree with the circuit court's conclusion that a guardian ad litem owes an absolute duty of confidentiality to the child[ren] he or she represents in an abuse and neglect proceeding, we find no error in the court's denial of DHHR's motion to remove Ms. Griffith as guardian ad litem in this matter. Accordingly, the March 1, 2006, order of the Circuit Court of Mercer County is affirmed.

Affirmed.

---

**18.** " 'It is well established that the word "shall," in the absence of language ... showing a contrary intent ..., should be afforded a mandatory connotation.' " *Retail Designs, Inc. v. West Virginia Div. of Highways*, 213 W.Va. 494, 500, 583 S.E.2d 449, 455 (2003) (quoting Syl. pt. 1, *Nelson v. West Virginia Pub. Employees Ins. Bd.*, 171 W.Va. 445, 300 S.E.2d 86 (1982)).

**19.** We note that a family court or circuit court has the inherent authority to appoint both a lawyer and a guardian ad litem where, in the court's discretion, such appointments are necessary. Additionally, Rule 52 of the Rules of Procedure for Child Abuse and Neglect Proceedings provides for the appointment of a Court–Appointed Special Advocate Representative, where such a program is available, "to further the best interests of the child." R. Proc. for Child Abuse & Neglect Proceedings 52(a).