IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2013 Term

_____

No. 13-0458

_____

FILED

**November 6, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA EX REL.
SCOTT ASH, PROSECUTING ATTORNEY OF
MERCER COUNTY, WEST VIRGINIA,
Petitioner

v.

THE HONORABLE DEREK C. SWOPE,
JUDGE OF THE CIRCUIT COURT OF MERCER COUNTY, WEST VIRGINIA,
and
CHUBBY HOSTON,
Respondents

_____

Petition For a Writ of Prohibition
The Honorable Derek C. Swope, Judge
Criminal Case No. 13-F-58

WRIT GRANTED

_____

Submitted: October 16, 2013
Filed: November 6, 2013

Joseph T. Harvey, Esq.                Patrick Morrisey
Harvey and Janutolo Law Offices       Attorney General
Princeton, West Virginia              Laura Young
Counsel for Respondent,               Assistant Attorney General
Chubby Hoston                         Charleston, West Virginia
                                      Counsel for Petitioner

JUSTICE KETCHUM delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "The State may seek a writ of prohibition in this Court in a criminal case where the trial court has exceeded or acted outside of its jurisdiction.  Where the State claims that the trial court abused its legitimate powers, the State must demonstrate that the court's action was so flagrant that it was deprived of its right to prosecute the case or deprived of a valid conviction.  In any event, the prohibition proceeding must offend neither the Double Jeopardy Clause nor the defendant's right to a speedy trial.  Furthermore, the application for a writ of prohibition must be promptly presented."  Syllabus Point 5, *State v. Lewis*, 188 W.Va. 85, 422 S.E.2d 807 (1992).


2.      Because many aspects of a guardian ad litem's representation of an incarcerated person in a family court proceeding comprise duties that are performed by a lawyer on behalf of a client, the rules of professional conduct generally apply to that representation.

JUSTICE KETCHUM:

Petitioner Scott Ash, the prosecuting attorney for Mercer County, West Virginia, invokes this Court's original jurisdiction in prohibition to challenge the April 26, 2013, order of the Circuit Court of Mercer County quashing a subpoena and barring the use of video evidence in a criminal prosecution. The circuit court's order prevented Respondent Chubby Hoston's guardian ad litem, appointed in a family court proceeding, from testifying in a subsequent criminal action brought against Mr. Hoston. The order also prevented the admission of a video recording of the guardian ad litem testifying in the family court hearing. The circuit court determined that the communication between Mr. Hoston and his guardian ad litem in the family court proceeding was protected under the attorney-client privilege.

Two issues are raised in this writ of prohibition: (1) whether an attorney-client relationship is formed between a lawyer and an incarcerated person when the lawyer is appointed to serve as the incarcerated person's guardian ad litem in a family court proceeding, and (2) if an attorney-client relationship is formed, may the incarcerated person assert that a statement is protected by the attorney-client privilege when the incarcerated person directed the guardian ad litem to convey the statement to a third party?

After review, we find that, in general, an attorney-client relationship is formed when a lawyer acts as an incarcerated person's guardian ad litem in a family court proceeding. Further, we find that when an incarcerated person directs his/her guardian ad

1

litem to convey a statement to a third party, that statement is not protected by the attorney-client privilege.

For the reasons set forth below, we grant the requested writ of prohibition.

## I. Factual & Procedural Background

Lisa Martin filed a domestic violence petition against Respondent Chubby Hoston. Because Mr. Hoston was incarcerated at the time this petition was filed, the family court judge appointed Lawyer Colin Cline ("Lawyer Cline") to act as Mr. Hoston's guardian ad litem. Prior to the family court hearing on the domestic violence petition, Lawyer Cline met with Mr. Hoston at the Southern Regional Jail. During this meeting, Mr. Hoston directed Lawyer Cline to make a statement on his behalf at the family court hearing.

Lawyer Cline delivered Mr. Hoston's message at the family court hearing, stating:

> Mr. Hoston has directed me in no uncertain terms to tell the court and everybody in this room that he intends if, what he said was, if she [Lisa Martin] doesn't leave me alone I am going to go to her place of employment and kill her. . . . He told me three times that I am to tell the judge that. I was directed by him to do that. I do not believe I am breaching confidentiality by saying that. I think there's actually an exception to the rules for this kind of information. But I was told by my client to say this, um, so there it is.

Based on Lawyer Cline's statement at the family court hearing, Mr. Hoston was charged with the criminal offense of intimidation of and retaliation against a witness, "by unlawfully and feloniously retaliating against Lisa Martin for attending, testifying, or

2

participating in a Domestic Violation Protection proceeding[.]" Mr. Hoston was charged with violating *W.Va. Code* § 61-5-27 [1999], which states, in part:

> (c) *Retaliation*. – It is unlawful for a person to cause injury or loss to a person or property, or to threaten or attempt to do so, with the intent to: . . .
>
> (3) Retaliate against any other person for attending, testifying or participating in an official proceeding, or for the production of any record, document or other object produced by a person in an official proceeding.

The prosecuting attorney in the criminal matter, Petitioner Scott Ash, issued a subpoena to Lawyer Cline, seeking his testimony on the statement Mr. Hoston directed him to deliver at the family court hearing. Mr. Hoston's criminal lawyer moved to quash the subpoena, arguing that the statement was a confidential communication protected by the attorney-client privilege. Mr. Hoston's criminal lawyer also argued that the circuit court should bar the video recording of the family court hearing from being introduced in the criminal proceeding because this recording contained Lawyer Cline's statement.

The circuit court held a suppression hearing to determine if Lawyer Cline could be required to testify in the criminal proceeding. The circuit court concluded that (1) an attorney-client relationship existed between Lawyer Cline and Mr. Hoston; (2) Lawyer Cline could not be compelled to testify against Mr. Hoston in the criminal proceeding without a waiver of the attorney-client privilege; and (3) Mr. Hoston had not waived his attorney-client privilege. The circuit court therefore granted "the Defendant's motion to suppress/prohibit the testimony" of Lawyer Cline in the criminal proceeding.

3

The circuit court also barred the video recording of the family court hearing from being introduced in the criminal proceeding.

After entry of the circuit court's April 26, 2013, order, Petitioner Scott Ash filed the present writ of prohibition.

**II. Standard of Review**

This Court addressed our standard of review for a writ of prohibition in a criminal matter in Syllabus Point 5 of *State v. Lewis*, 188 W.Va. 85, 422 S.E.2d 807 (1992):

> The State may seek a writ of prohibition in this Court in a criminal case where the trial court has exceeded or acted outside of its jurisdiction. Where the State claims that the trial court abused its legitimate powers, the State must demonstrate that the court's action was so flagrant that it was deprived of its right to prosecute the case or deprived of a valid conviction. In any event, the prohibition proceeding must offend neither the Double Jeopardy Clause nor the defendant's right to a speedy trial. Furthermore, the application for a writ of prohibition must be promptly presented.

Further, in Syllabus Point 4 of *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996), we set forth the following standard for issuance of a writ of prohibition when it is alleged a lower court is exceeding its authority:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged

4

or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

With these standards in mind, we turn to the parties' arguments.

## III. Analysis

Two issues are raised in this writ. The first issue is whether an attorney-client relationship was formed between Lawyer Cline and Mr. Hoston when Lawyer Cline was appointed to serve as Mr. Hoston's guardian ad litem in the family court proceeding. Second, if an attorney-client relationship was formed, may Mr. Hoston assert that the statement he directed Lawyer Cline to make on his behalf at the family court hearing is protected by the attorney-client privilege?

## A. Attorney-Client Relationship

The first issue we address is whether an attorney-client relationship exists between a lawyer and an incarcerated person when a lawyer is appointed to serve as the incarcerated person's guardian ad litem in a family court proceeding.

5

Rule 21 of the *West Virginia Trial Court Rules* governs the appointment of guardians ad litem in family court proceedings.[1]  Trial Court Rule 21.03 states that a guardian ad litem "shall make a full and independent investigation of the facts involved in a proceeding and make recommendations to the court by testimony or in writing, unless otherwise ordered by the court."  While this rule sets forth the general duties required of a guardian ad litem, the rule is silent on whether an attorney-client relationship exists between a guardian ad litem and the person whom the guardian is appointed to represent.[2]

This Court has not previously addressed whether an attorney-client relationship exists between a lawyer and an incarcerated person when a lawyer is appointed to serve as an incarcerated person's guardian ad litem in a family court proceeding.  For guidance, we look to *In re Christina W.*, 219 W.Va. 678, 639 S.E.2d 770 (2006), in which this Court examined whether an attorney-client relationship existed

---

[1]Rule 21.01 of the *West Virginia Trial Court Rules* states:

> This Rule applies to all eligible guardian ad litem appointments in circuit court, family court and magistrate court.  This Rule does not apply to guardians ad litem appointed in abuse and neglect proceedings.

[2]Rule 26 of the *West Virginia Rules of Practice and Procedure for Domestic Violence Civil Proceedings*, entitled "Appointments of guardians ad litem," states "Rule 21 of the West Virginia Trial Court Rules for Trial Courts of Record shall govern the appointment of guardians ad litem in domestic violence civil proceedings."  Rule 26 is silent on whether an attorney-client relationship exists between a guardian ad litem and the person whom the guardian is appointed to represent in a domestic violence proceeding.

between a guardian ad litem and a child the guardian was appointed to represent in an abuse and neglect proceeding. The Court in *Cristina W.* determined that guardians ad litem were required to "perform a wide variety of lawyerly duties" in abuse and neglect cases. *Id.* at 683, 639 S.E.2d at 774. The Court concluded that "a guardian ad litem serves in a capacity very similar to that of a lawyer representing a client." 219 W.Va. at 682, 639 S.E.2d at 774. Based on this finding, the Court held in Syllabus Point 3 that:

> Because many aspects of a guardian ad litem's representation of a child in an abuse and neglect proceeding comprise duties that are performed by a lawyer on behalf of a client, the rules of professional conduct generally apply to that representation.

Similar to the Court's holding in *Christina W.*, we find that a lawyer serving as a guardian ad litem for an incarcerated person in a family court proceeding is required to perform a number of "lawyerly duties." In the instant case, Lawyer Cline met with Mr. Hoston prior to the family court hearing, discussed the domestic violence petition with him, and acted as his counsel at the hearing. The family court judge referred to Mr. Hoston as Lawyer Cline's "client." Similarly, Lawyer Cline concluded his statement to the family court by stating, "I was told by *my client* to say this[.]" (Emphasis added.) In the circuit court's order, the court notes that the duties of a guardian ad litem appointed to an incarcerated person in a family court proceeding are "akin to traditional attorney/client representation." We agree. Accordingly, we hold that, because many aspects of a guardian ad litem's representation of an incarcerated person in a family court proceeding comprise duties that are performed by a lawyer on behalf of a client, the rules of professional conduct generally apply to that representation.

7

Having determined that an attorney-client relationship existed between Lawyer Cline and Mr. Hoston, we proceed to examine the attorney-client privilege.

## B. Attorney-Client Privilege

We next address whether the statement Mr. Hoston directed Lawyer Cline to make on his behalf at the family court hearing is protected by the attorney-client privilege.

By way of background, it is a fundamental principle in the lawyer-client relationship that the lawyer maintain the confidentiality of information relating to the representation of a client. Comment, Rule 1.6 of the *Rules of Professional Conduct*. The rationale for the privilege is to encourage a client to communicate fully and frankly with the lawyer even as to embarrassing or legally damaging subject matter. *Id.* It has long been recognized that the attorney-client privilege

> is founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from consequence or the apprehension of disclosure.

*Hunt v. Blackburn*, 128 U.S. 464, 470 (1888). The privilege is under the "exclusive control of the client rather than the attorney." *State ex rel. Doe v. Troisi*, 194 W.Va. 28, 35, 459 S.E.2d 139, 146 (1995).

The attorney-client privilege is set forth in the *Rules of Professional Conduct* and in our common law. Rule 1.6 of the *Rules of Professional Conduct* states:

8

(a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraph (b).

(b) A lawyer may reveal such information to the extent the lawyer reasonably believes necessary:

(1) to prevent the client from committing a criminal act; or

(2) to establish a claim for defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of a client.

In Syllabus Point 2 of *State v. Burton*, 163 W.Va. 40, 254 S.E.2d 129 (1979), this Court set forth a three-factor test to determine whether the attorney-client privilege may be asserted:

In order to assert an attorney-client privilege, three main elements must be present: (1) both parties must contemplate that the attorney-client relationship does or will exist; (2) the advice must be sought by the client from the attorney in his capacity as a legal advisor; (3) the communication between the attorney and client must be intended to be confidential.

Turning to the instant case, we find that Mr. Hoston cannot satisfy the third element in *Burton*. Mr. Hoston directed Lawyer Cline to tell "the [family] court and everybody in this [court]room" that he intended to kill Ms. Martin if she pursued the domestic violence petition against him.[3] In order to assert an attorney-client privilege,

---

[3]In his brief to this Court, Mr. Hoston argues that he "was not actually directing Mr. Cline to deliver a threat, but was, in fact, blowing off steam." This assertion is belied by the fact that Mr. Hoston told Lawyer Cline *three times* that he wanted this threat made at the family court hearing. Further, Mr. Hoston's threat was specific: he not only stated

(continued . . .)

9

the communication must be intended to be confidential. This case presents a clear example of a communication that is not intended to be confidential, rather, it was intended to be disseminated to everyone at the family court hearing. "[S]tatements made by a client to an attorney are not within the attorney-client privilege if the information is given with the intent that it be used and disseminated to third parties." Franklin D. Cleckley, Louis J. Palmer, & Robin J. Davis, *Handbook on Evidence for West Virginia Lawyers*, § 501.02[7][F] (5th ed. 2012). The Fourth Circuit Court of Appeals has stated that "[t]o be privileged it must be intended that information given [to] an attorney remain confidential; information given with the intent that it be used . . . is inconsistent with the confidentiality asserted." *United States v. Martin*, 773 F.2d 579, 584 (4th Cir. 1985). *See United States v. Oloyede*, 982 F.2d 133 (4th Cir. 1992) (When the communication was intended to be disseminated to third parties, the privilege does not protect the communication from disclosure). *See also United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) ("Any disclosure inconsistent with maintaining the confidential nature of the attorney-client relationship waives the attorney-client privilege."). Because Mr. Hoston directed Lawyer Cline to disseminate his statement to everyone at the family court hearing, we find that he cannot satisfy the third element of *Burton*.

Mr. Hoston's claim of attorney-client privilege also fails under Rule 1.6 of the *Rules of Professional Conduct*. Rule 1.6(a) states, in part, "A lawyer shall not reveal

---

that he was going to kill Ms. Martin, but also stated where he was going to do it–at her place of employment.

10

information relating to representation of a client *unless the client consents* after consultation[.]" (Emphasis added.)  Mr. Hoston not only consented to Lawyer Cline revealing the information he communicated to him, Mr. Hoston *ordered* Lawyer Cline to reveal the information to everyone at the family court hearing.  Because Mr. Hoston ordered Lawyer Cline to reveal this information to a third party, he cannot maintain a claim of attorney-client privilege under Rule 1.6 of the *Rules of Professional Conduct*.

Based on the foregoing, we find that the circuit court's ruling that Mr. Hoston did not waive the attorney-client privilege when he ordered Lawyer Cline to disseminate his statement to everyone at the family court hearing is clearly erroneous as a matter of law.  We conclude that the circuit court abused its legitimate powers and effectively deprived the State of its right to prosecute this case when it granted Mr. Hoston's motion to suppress the testimony of Lawyer Cline, which testimony is critical to the State's case against Mr. Hoston.

## IV. Conclusion

For the foregoing reasons, we find that the petitioner is entitled to the requested writ of prohibition to prohibit the circuit court from suppressing the testimony of Lawyer Cline.  We therefore vacate the April 26, 2013, ruling of the Circuit Court of Mercer County.

Writ granted.

11