No. 23-698 – *In re A.F.*

TRUMP, Justice, concurring.

**FILED**
**June 6, 2025**
**released at 3:00 p.m.**
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

I agree with the majority's conclusion that the circuit court erred by denying the grandparents'[1] motion for custody of their granddaughter, A.F., without making adequate findings of fact and conclusions of law to demonstrate that it considered West Virginia Code § 49-4-114(a)(3) (2024) (the "grandparent preference statute") and determined, based on the record in its entirety, that placement with her grandparents was contrary to A.F.'s best interests. I write separately to explain why I would further conclude that the circuit court erred when, in rendering its decision to deny the grandparents' motion for custody of A.F., it placed undue weight upon the DHS's unlawful recommendations against A.F.'s placement with her grandparents. I would also adopt a new syllabus point, holding that a circuit court abuses its discretion when it places undue weight upon a DHS recommendation submitted to the circuit court in violation of the grandparent preference statute, which explicitly requires the DHS to "assure that the grandparents are offered the placement of the child prior to the consideration of any other prospective adoptive parents" if "the department determines, based on the home study evaluation, that the grandparents would be suitable adoptive parents." W. Va. Code § 49-4-114(a)(3).

In addition to their other arguments, the grandparents contend that the DHS violated its duties under the grandparent preference statute when, after approving the

---

[1] "The grandparents" refers to the petitioners in this case, P.F. and R.F.

grandparents' home study, the DHS opposed the grandparents' motion for custody of A.F. The grandparents point out in their brief that, rather than "assure" they were offered placement of A.F. after their successful home study, the DHS "opposed the grandparents at every turn and, therefore, failed to observe the directives of [the grandparent] preference statute or apply it in an appropriate manner." (Internal quotation marks and citation omitted).

The grandparents liken this case to *Napoleon S.*, where the DHS refused to place a child with suitable grandparents after the grandparents received an approved home study and a favorable psychological evaluation. *See Napoleon S. v. Walker*, 217 W. Va. 254, 617 S.E.2d 801 (2005). There, this Court found that the circuit court abused its discretion in affirming the DHS's decision and explained that "the grandparent preference . . . must be recognized as essential guidance in the determination of child placement" and that "[t]he [DHS] failed to observe the directives of that preference or apply it in an appropriate manner in [the] case." *Id.* at 261, 617 S.E.2d at 808 (footnote omitted).

I agree with the grandparents' arguments on this issue. In its brief, the DHS makes no attempt to reconcile its opposition to the grandparents' motion for custody, leading up to and during the October 2023 hearing, with the mandatory directives of the grandparent preference statute. Instead, the DHS recites portions of the factual record to argue that the grandparent preference was overcome by A.F.'s best interests and that its actions were, thereby, justified. The DHS further contends that passing the home study "is

2

just the first step in being considered for permanent placement." I strongly disagree. Rather, a successful home study is the *final step* that occurs before the DHS *must* recommend grandparent placement according to the grandparent preference statute. Once again, the statute provides that after a successful home study, the DHS "*shall assure* that the grandparents are offered the placement of the child." W. Va. Code § 49-4-114(a)(3) (emphasis added). "It is well established that the word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation." Syl. Pt. 1, *Nelson v. W. Va. Pub. Emps. Ins. Bd.*, 171 W. Va. 445, 300 S.E.2d 86 (1982). While the circuit court (not the DHS)[2] ultimately determines whether a child will be placed for adoption with suitable grandparents, the mandatory directive to the DHS to "assure" placement with a suitable grandparent certainly requires the DHS, *at the very least*, to recommend such placement to the circuit court.

Moreover, the circuit court was on notice that the DHS's recommendations against grandparent placement in this case violated the grandparent preference statute. The circuit court was aware that the grandparents had an approved home study, and the circuit court should have understood the DHS's statutory duties under the grandparent preference statute. Yet, the circuit court specifically considered the "recommendations of record" in

---

[2] Of course, it is the circuit judge and not the DHS that ultimately determines where the child is placed for adoption based on a "best interests of the child" analysis. *See* W. Va. R. P. Child Abuse & Neglect Proc. 36 ("The court has exclusive jurisdiction to determine the permanent placement of a child. Placement of the child shall not be disrupted or delayed by any administrative process of the [DHS.]").

its November 2023 order, while making *no mention* of the grandparent preference statute. This Court has explained, generally, "when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed but the circuit court makes a serious mistake in weighing them" the court abuses its discretion. *Shafer v. Kings Tire Serv., Inc.*, 215 W.Va. 169, 177, 597 S.E.2d 302, 310 (2004) (internal quotation marks and citation omitted). Here, the circuit court should have given significant weight to the grandparent preference statute, but failed to do so, while considering the DHS's unlawful, and therefore improper, recommendations.

I believe that this Court should hold that it is an abuse of discretion for a circuit court to place undue weight upon a DHS recommendation submitted to the circuit court in violation of the grandparent preference statute. I do not believe that such a holding from this Court would risk creating "a perfunctory grant of custody" to grandparents of children removed in abuse and neglect cases. *See Napoleon S.*, 217 W. Va. at 260, 617 S.E.2d at 807 ("[T]he existence of a preference does not translate into a perfunctory grant of custody."). As the record in this case demonstrates, a DHS home study is not merely an evaluation of a grandparent's physical residence, but an in-depth investigation into a grandparent's suitability to become certified as a relative guardianship provider. This case exemplifies how DHS concerns with a grandparent's criminal history, past maltreatment substantiations, discipline tactics, and even "life-style choices" may lead to a "denied"

home study.[3] Again, this Court has made abundantly clear that "adoption by a child's grandparents is permitted [by the circuit court] *only if such adoptive placement serves the child's best interests*." *In re Elizabeth F.*, 225 W. Va. 780, 786-87, 696 S.E.2d 296, 302-03 (2010) (emphasis added) (citation omitted). Like all decisions in abuse and neglect cases, the best interests of the child are paramount in the circuit court's ultimate decision as to whether a child will be placed for adoption with a grandparent.[4] But it is always the circuit court, not the DHS, that ultimately decides whether placement with suitable grandparents serves the best interests of the child based on the entire record of an abuse and neglect case.[5] The DHS is bound by the mandatory directives in the grandparent preference

---

[3] The DHS home study process is intended to ensure that all grandparents approved for placement are suitable adoptive parents for children removed from their homes, consistent with the best interests of the child. *See Napoleon S.*, 217 W. Va. at 256, 617 S.E.2d at 803, Syl. Pt. 5 ("By specifying in West Virginia Code § [49-4-114(a)(3)] that the home study must show that the grandparents 'would be suitable adoptive parents,' the Legislature has implicitly included the requirement for an analysis by [the DHS] and circuit courts of the best interests of the child, given all circumstances of the case.").

Additionally, I am unaware of any reason the DHS could not revoke a relative guardianship certification if circumstances occurring or learned after the DHS approves a home study render a previously approved grandparent unfit or ineligible to care for the child.

[4] *See e.g.* Syl. Pt. 2, *State ex rel. Lipscomb v. Joplin*, 131 W. Va. 302, 47 S.E.2d 221 (1948) ("In a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided."); Syl. Pt. 5, in part, *Carter v. Carter*, 196 W. Va. 239, 470 S.E.2d 193 (1996) ("In . . . custody matters, we have traditionally held paramount the best interests of the child."); Syl. Pt. 3, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("[T]he primary goal in cases involving abuse and neglect . . . must be the health and welfare of the children.").

[5] I further note that every child in an abuse and neglect case has a right to representation by a guardian ad litem, who has no duty to agree with the results of a DHS home study. *See* W. Va. Code § 49-4-601(f) (2025); *see also In re Christina W.*, 219 W. Va.

statute.[6] Where the DHS disregards its statutory duty in this respect, I believe it to be wholly improper for the circuit court to afford any evidentiary weight to the DHS's unlawful recommendations.

Based on the foregoing, I agree with the majority's opinion, but I would further find that the circuit court abused its discretion when it considered the DHS's unlawful recommendations in denying the grandparents' motion for custody of A.F. I would also take this opportunity to adopt a new syllabus point, as described above, to prevent the DHS from undermining the grandparent preference statute in future cases through the same type of misconduct that occurred in this case. In remanding this case to the circuit court, I would instruct the circuit court not to place any evidentiary weight on the DHS's unlawful recommendations against the grandparents' motion for custody of A.F. when rendering its new order on remand.

---

678, 682, 639 S.E.2d 770, 774 (2006). This Court has held that "[e]ach child in an abuse and neglect case is entitled to effective representation of counsel. To further that goal, [West Virginia Code § 49-4-601] mandates that a child has a right to be represented by counsel in every stage of abuse and neglect proceedings." Syl. Pt. 5, in part, *In re Jeffrey R.L.*, 190 W. Va. 24, 435 S.E.2d 162 (1993).

[6] *See In re M.F.*, 250 W. Va. 338, 345, 902 S.E.2d 887, 894 (2024) (Remanding a case to the circuit court after finding that the DHS failed to comply with a mandatory directive of the grandparent preference statute—specifically, "the statutory directive of first considering the suitability of the Grandparents as an adoptive placement" for a child removed from the home.).