607 S.E.2d 372

**In re AMBER LEIGH J. & James Jack J.**

**No. 31711.**

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 8, 2004.

Filed Nov. 1, 2004.

Dana R. Shay, Esq., Fairmont, for Rose J.

Darrell V. McGraw, Jr., Esq., Attorney General, Charleston, Rocco S. Fucillo, Esq., Assistant Attorney General, Fairmont, for WV DHHR.

Gary J. Martino, Fairmont, Guardian ad Litem.

PER CURIAM:

This case is before this Court upon appeal of a final order of the Circuit Court of Marion County entered on June 5, 2003. Pursuant to that order, the circuit court terminated the parental rights of the appellant, Rose J.,[1] and her husband, Troy J. to their daughter, Amber Leigh J. Although the court did not terminate the parental rights of Rose and Troy to their son, James Jack J., the court did order that he remain in the legal and physical custody of the West Virginia Department of Health and Human Resources (hereinafter "DHHR"). The court further provided that Rose and Troy would be permitted to have supervised visitation with James. In this appeal, Rose contends that the circuit court erred by terminating her

---

**1.** We follow our traditional practice in cases involving sensitive facts and use initials to identify the parties rather than their full names. *See In the Matter of Jonathan P.*, 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989). For ease of reading this opinion, after the parties are initially identified, they will thereafter be referred to by their first name only.

parental rights to Amber and granting permanent custody of James to the DHHR.[2]

This Court has before it the petition for appeal, the entire record, and the briefs of counsel. For the reasons set forth below, the final order is affirmed.

## I.

### FACTS

The DHHR began providing services to Rose and Troy in 1998, after receiving several reports that their children, Amber, born September 6, 1992, and James, born November 4, 1988, were suffering from chronic lice, were missing numerous days of school as a result thereof, and generally appeared dirty and unkempt. Upon visiting the family home, the DHHR found the house filthy with rotten food and beer cans everywhere. The house was also infested with roaches and black flies. Within a couple days, Rose improved the cleanliness of the home. However, approximately one month later, the DHHR received another referral concerning the family. This time it was reported that school books had been sent home with the children and were returned full of bugs. Over the next few years, the DHHR continued to receive similar reports.[3] Several attempts were made to help the family rectify the lice problem, but the parents refused the assistance offered to them by school personnel and the DHHR.

Finally, on December 18, 2001, the DHHR filed a petition alleging that both children had been the victims of chronic neglect since 1998. The DHHR sought legal but not physical custody of the children at that time. An adjudicatory hearing was held on February 5, 2002, and the court found that Amber had been neglected.[4] However, the petition with regard to James was dismissed because there was no clear and convincing evidence that he had been abused or neglected.

Thereafter, on March 21, 2002, the DHHR was advised that Amber was still attending school while infested with lice. The DHHR concluded that the lice problem had escalated since the filing of the petition. Accordingly, Amber was removed from the home and placed in foster care.

Subsequently, on June 24, 2002, the DHHR was advised that Amber told her foster mother that she had been sexually abused. An investigation commenced. Amber indicated that she had been sexually abused by her mother, Rose, her father, Troy, her brother James, and a friend of her brother, Steven H. Amber was interviewed by two experts with several years experience in the field of child abuse. Her reports of being sexually abused were found to be credible. As a result, the DHHR amended its petition, adding allegations of sexual abuse of Amber. The DHHR also requested that James be removed from the home and placed in foster care because he was at risk of being sexually abused.

A second adjudicatory hearing was held on September 12, 2002. The court made a finding of abandonment on the part of the parents since they had left the State after the children had been removed from their home and not maintained contact with the DHHR.[5] Nonetheless, the court granted a 90-day improvement period.

The disposition hearing was held on April 1, 2003. The court found that the parents had abandoned the children and refused to participate in a reasonable family case plan. The court concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future. Accordingly, Rose and Troy's parental rights to Amber were terminated. In addition, James was placed in the perma-

2. Troy appealed the circuit court's final order on February 25, 2004, and this Court refused his petition for appeal on June 24, 2004.

3. There was an allegation made in 1999, that a bag a marihuana was found on top of the refrigerator in the home. The record also indicates that the parents have a history of alcohol abuse.

4. The evidence showed that Amber had chronic lice and enuresis. She had missed twenty-four days of school between September and December 2001.

5. Apparently, Rose and Troy left West Virginia because of Troy's job. He was transferred to another location out of state.

nent custody of the DHHR. However, pursuant to James' request, the parental rights of Rose and Troy to James were not terminated, and the court ordered that James could request supervised visits with his parents. The court also provided that visits between James and Amber would be permitted when Amber felt comfortable with the visitation.[6] The court's final order was entered on June 5, 2003, and this appeal followed.

## II.

## STANDARD OF REVIEW

■■■ This Court explained in *In re Emily*, 208 W.Va. 325, 332, 540 S.E.2d 542, 549 (2000) that, "For appeals resulting from abuse and neglect proceedings, such as the case *sub judice*, we employ a compound standard of review: conclusions of law are subject to a *de novo* review, while findings of fact are weighed against a clearly erroneous standard." Also, in Syllabus Point 1 of *In the Interest of: Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996), this Court held that:

Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence

is plausible in light of the record viewed in its entirety.

With these standards in mind, we now consider whether the circuit court erred in this case.

## III.

## DISCUSSION

We will discuss Rose's assignments of error as they relate to each child.

### A. Amber

■■■ Rose first asserts that the circuit court erred by finding that she sexually abused Amber. She contends that Amber's statements about the sexual abuse are "suspect and unbelievable." In support of this contention, Rose notes that Amber told psychologist John Todd that her mother fondled her one time, but she told a DHHR worker that it happened several times. Rose points out that Amber's physical exam was normal, and that Amber never reported any sexual abuse until she was placed in foster care with another sexually abused child. Thus, Rose asserts that the court's finding that she sexually abused Amber was erroneous.

Having thoroughly reviewed the record in this case, we believe that there was clear and convincing evidence that Amber was sexually abused. In that regard, testimony was provided at the adjudicatory hearing by two experts in the field of child sexual abuse, Kerry Jones and John B. Todd. Each expert had several years experience interviewing and evaluating sexually abused children.[7] Both experts opined that Amber had been sexually abused by her mother, father, brother, and a friend of her brother. The experts testified that they reached this conclusion based upon the details Amber provided. They explained that Amber gave specific and concrete details as to what happened, demonstrating that she had sexual knowledge that she could not have had unless she was abused.

Although Amber's physical examination was normal, both experts stated that this did

---

6. Amber and James were placed in different foster homes because Amber reported that James had sexually abused her.

7. Kerry Jones has been employed by the West Virginia University Department of Pediatrics for seven years. He is Coordinator of the Child Abuse Services Team and routinely evaluates sexually abused children. John B. Todd is a licensed psychologist in private practice. He has twenty years of experience in the field of child abuse.

not indicate that the sexual abuse had not occurred. The experts also pointed out that Amber suffers from enuresis, which is common among children who have been sexually abused. Finally, Amber's disclosure of the abuse to various persons was generally consistent. She did tell Kerry Jones that her mother fondled her many times, but indicated to John Todd that it happened only once. Nonetheless, both experts said they believed that Rose had sexually abused Amber. Furthermore, both experts testified that Amber told them that her mother knew that her father and brother were sexually abusing her, but did not try to stop them. Based on all the above, we cannot say that the court erred by finding that Rose sexually abused Amber or knowingly permitted such abuse to occur.

 Likewise, we do not believe the court erred by terminating Rose's parental rights to Amber. This Court has held that:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, *W.Va.Code*, 49–6–5 [1977] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under *W.Va.Code*, 49–6–5(b) [1977] that conditions of neglect or abuse can be substantially corrected." Syllabus Point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syllabus Point 4, *In the Matter of Jonathan P.*, 182 W.Va. 302, 387 S.E.2d 537 (1989). In addition, this Court has declared that:

> "[C]ourts are not required to exhaust every speculative possibility of parental improvement before terminating parental rights where it appears that the welfare of the child will be seriously threatened . . . ." Syl. Pt. 1, in part, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syllabus Point 7, in part, *In the Interest of Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991). Finally,

> "Termination of parental rights of a parent of an abused child is authorized under *W.Va.Code*, 49–6–1 to 49–6–10, as amended, where such parent contends nonparticipation in the acts giving rise to the termination petition but there is clear and convincing evidence that such nonparticipating parent knowingly took no action to prevent or stop such acts to protect the child. Furthermore, termination of parental rights of a parent of an abused child is authorized under *W.Va.Code*, 49–6–1 to 49–6–10, as amended, where such nonparticipating parent supports the other parent's version as to how a child's injuries occurred, but there is clear and convincing evidence that such version is inconsistent with the medical evidence." Syl. Pt. 2, *In re Scottie D.*, 185 W.Va. 191, 406 S.E.2d 214 (1991).

Syllabus Point 5, *West Virginia Dept. of Health and Human Resources ex rel. Wright v. Doris S.*, 197 W.Va. 489, 475 S.E.2d 865 (1996).

As set forth above, Rose has and continues to deny that Amber was sexually abused by her or anyone else despite clear and convincing evidence to the contrary. In *Doris S.*, this Court explained that:

> Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

197 W.Va. at 498, 475 S.E.2d at 874. Consequently, it is clear that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future.

Moreover, Rose did not utilize any of the services offered to her by the DHHR, nor did she participate in the family case plan. In fact, after her children were removed from her home, Rose left West Virginia because her husband obtained employment in another state. She did not maintain contact with the DHHR or even attempt to get in touch with her children. She did not attend any hearings until the final disposition, and she failed to appear at the multidisciplinary team meetings. Rose simply did not make any effort to be reunited with her children.

It is clear to this Court that Amber's welfare would be seriously threatened if she were returned to her mother's custody.

Thus, we affirm the circuit court's order terminating Rose's parental rights to Amber.

### B. James

■ Rose also contends that the court erred by adjudicating James as an abused and neglected child based on abandonment. Following the adjudicatory hearing held on September 12, 2002, the court entered an order finding that James was "an abandoned child as defined by the W.Va.Code." Rose contends that there was no evidence that she ever intended to forego all duties and relinquish all parental claims to James. She only left West Virginia to go live with her husband who had a job in Kansas[8] after James was removed from her custody. Thus, Rose concludes that the court erred by finding that she abandoned James.

■ While Rose may not have "abandoned" James as defined by statute,[9] the record still supports a finding that James was an abused child. As discussed above, there was clear and convincing evidence presented at the adjudicatory hearing showing that Amber was sexually abused. While there was no evidence that James was also a victim of sexual abuse by his parents, this Court has held that:

> Where there is clear and convincing evidence that a child has suffered physical and/or sexual abuse while in the custody of his or her parent(s), guardian, or custodian, another child residing in the home when the abuse took place who is not a direct victim of the physical and/or sexual abuse but is at risk of being abused is an abused child under W.Va.Code, 49–1–3(a) (1994).

Syllabus Point 2, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995). Thus, we

affirm the circuit court's finding that James was abused within the meaning of W.Va.Code § 49–1–3(a).[10]

■ Finally, Rose asserts that the circuit court abused its discretion by placing James in the permanent custody of the DHHR. Rose points out that James said that he wanted to return to his parents' home and that he did not want his parents' parental rights terminated. She further maintains that there was no evidence of abuse or neglect with regard to James, and it was not in his best interests to be placed in permanent foster care.

■ "In the Court's analysis of child abuse and neglect cases, we must take into consideration the rights and interests of all of the parties in reaching an ultimate resolution of the issues before us." *In re Jeffrey R.L.*, 190 W.Va. 24, 32, 435 S.E.2d 162, 170 (1993). Of course, "the best interests of the child are paramount." *Id.* In this case, the circuit court abided by James' wishes and did not terminate Rose's parental rights to him. In doing so, the Court relied upon W.Va.Code § 49–6–5(a)(6) (2002) which provides that, "Notwithstanding any other provision of this article, the court shall give consideration to the wishes of a child fourteen years of age or older or otherwise of an age of discretion as determined by the court regarding the permanent termination of parental rights." [11]

Having considered all the facts and circumstances of this case as well as the applicable statutory and case law, we agree with the circuit court's decision not to terminate Rose's parental rights to James. We also agree with the circuit court's decision to place James in the permanent custody of the DHHR. As with Amber, we believe that

---

8. The record indicates that Rose and Troy also resided in North Carolina and Ohio during the course of these proceedings.

9. W.Va.Code § 49–6–9 (1980) defines "abandoned" as "to be without supervision or shelter for an unreasonable period of time in light of the child's age and the ability to care for himself or herself in circumstances presenting an immediate threat of serious harm to such child[.]" As noted above, Rose did not leave West Virginia until after James was removed from her custody. Therefore, we cannot say that she had abandoned her son at the time the amended petition was filed in this case.

10. "This Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment." Syllabus Point 3, *Barnett v. Wolfolk*, 149 W.Va. 246, 140 S.E.2d 466 (1965).

11. At the time of the disposition hearing, James was fourteen years old.

James would be at risk for further abuse and neglect if he were returned to Rose's custody. Furthermore, as discussed above, Rose never made any effort to be reunited with her children. The circuit court's decision does allow Rose to continue visitation with James, thereby preserving the parent-child relationship. Thus, we cannot say that the circuit court erred by placing James in permanent foster care.

## IV.

## CONCLUSION

For the reasons set forth above, the final order of the Circuit Court of Marion County entered on June 5, 2003, is affirmed.

Affirmed.