# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In Re: S.R., J.R., A.D., & K.D.**

**No. 13-0731** (Putnam County 11-JA-39 through 11-JA-42)

**FILED**

November 26, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

### MEMORANDUM DECISION

Petitioner Father, by counsel Rosalee Juba-Plumley, appeals the Circuit Court of Putnam County's June 18, 2013 order terminating his parental, custodial, and guardianship rights to S.R., J.R., A.D., and K.D. The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Michael L. Jackson, filed its response in support of the circuit court's order. The guardian ad litem, Stacy Ann Jacques, filed a response on behalf of the children supporting the circuit court's order. On appeal, petitioner alleges that the circuit court erred in adjudicating him as an abusing parent due to sexual abuse of S.R. because the order contained insufficient findings and the evidence did not support the finding of sexual abuse.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December of 2011, the DHHR filed its initial abuse and neglect petition alleging that petitioner sexually abused his step-daughter, S.R., provided alcohol to one or more minor children, engaged in domestic violence in the children's presence, and engaged in excessive corporal punishment. Thereafter, the circuit court held a series of adjudicatory hearings beginning on January 27, 2012. During the first adjudicatory hearing, the circuit court heard testimony from forensic child interviewer Maureen Runyon. Ms. Runyon testified that she interviewed J.R. and A.D. and both credibly stated that they witnessed domestic violence and experienced physical abuse, though they both denied they had been sexually abused. Ms. Runyon did not interview S.R. because the child had previously spoken with a detective trained in child interviews. However, Ms. Runyon testified that A.D. had knowledge of S.R. documenting sexual abuse in a diary and that petitioner would sometimes take S.R. into a room alone and tell the other children to stay away. Detective Lisa Arthur also testified that S.R. told her she had been sexually abused over a period of years, that petitioner touched her genitals with lubricants and a vibrator, and that petitioner forced her to engage in oral and anal sex. Detective Arthur testified that S.R. exhibited sexual knowledge beyond her years. Physical exams did not reveal physical evidence of sexual abuse.

At the next adjudicatory hearing in March of 2012, the circuit court heard testimony from a Child Protective Services worker that all the children expressed fear of petitioner due to past physical abuse. This worker did not question the children about sexual abuse because of their prior interviews. The circuit court then conducted four more adjudicatory hearings through August of 2012, and heard testimony from multiple witnesses. Additionally, the circuit court conducted an *in camera* interview with S.R., allowing attorneys to submit questions for the child. During the interview, S.R. recounted sexual abuse by petitioner over a period of several years. Petitioner also presented several witnesses on his behalf who testified that the mother had previously disclosed that she thought S.R. had been sexually abused by her own mother's boyfriend when she was five, that the children never expressed fear of petitioner, and that they thought petitioner was a good father. Petitioner's witnesses also testified that petitioner never spent time alone with the children, except on rare occasions. However, on cross-examination, petitioner did admit that on one particular night when he was alleged to have sexually abused S.R., she slept alone with him in his bedroom.

Petitioner's expert witness, psychologist Dr. Krieg, testified that he believed, based on the children's interviews, they had been exposed to information by adults speaking in front of them or that they were coached. Dr. Krieg further stated that S.R. appeared to be the victim of sexual abuse, but that he was not sure petitioner was responsible. Dr. Krieg recommended a psychological evaluation of S.R., which the circuit court ordered. The circuit court eventually heard testimony from the psychologist appointed to conduct S.R.'s forensic psychological examination, Barbara Nelson. Ms. Nelson testified that she found S.R.'s account of petitioner's sexual abuse to be very credible. S.R.'s account included a description of petitioner grooming her with pills and alcohol to be receptive to the sexual abuse and a description of S.R. being made to feel special for hiding the abuse. Ms. Nelson testified that S.R. described intense feelings of shame and anxiety as a result of the abuse being revealed. The circuit court also conducted *in camera* interviews with J.R. and A.D.

On November 14, 2012, the circuit court issued its adjudicatory order, finding that petitioner sexually abused S.R. from the ages of six to eleven. The circuit court noted that the child had disclosed the abuse to at least three state officials who had conducted appropriate interviews and found her disclosures to be credible. Further, the circuit court found that J.R. and A.D. both acknowledged that petitioner sometimes took S.R. into another room where they were not allowed to follow. Finally, the circuit court found that a lack of physical evidence did not make S.R.'s disclosures less credible. In May of 2013, the circuit court held a dispositional hearing and ultimately terminated petitioner's parental, custodial, and guardianship rights to all of the children.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such

child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

Upon our review, the Court finds no error in the circuit court adjudicating petitioner as an abusing parent due to his sexual abuse of S.R. West Virginia Code § 49-6-2(c) states that, following an adjudicatory hearing, a circuit court "shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected . . . ." That code section further requires that "[t]he findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing proof." In discussing this evidentiary standard, we have previously held that

> "W.Va.Code [§] 49–6–2(c) [1980], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing proof.' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In the Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, in part, *In re Joseph A.*, 199 W.Va. 438, 485 S.E.2d 176 (1997). Upon our review, it is clear that the evidence below was sufficient to support the circuit court's finding that petitioner sexually abused S.R.[1]

As noted above, the circuit court held six adjudicatory hearings over a span of eight months and heard testimony from a variety of witnesses, both expert and lay. Petitioner's argument in support of his assignment of error essentially calls into question the credibility of the witnesses and evidence upon which the circuit court based its finding of sexual abuse. According to petitioner, many facts from the child's statements were contradicted by other witnesses. Accordingly, petitioner argues that the contradictions call into question the sufficiency of the

---

[1] In its adjudicatory order, the circuit court further found that the remaining children were abused by virtue of their presence in the home when the sexual abuse occurred and the associated risk of abuse to those children pursuant to West Virginia Code § 49-1-3 and our prior holdings. *See* Syl. Pt. 5, *In re Amber Leigh J.*, 216 W.Va. 266, 607 S.E.2d 372 (2004) (quoting Syl. Pt. 2, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995)). Because we affirm the circuit court's finding that petitioner sexually abused S.R., the finding of abuse as to the other children is also affirmed.

evidence, especially in light of the circuit court's failure to address the contradictory evidence in its findings of fact. The Court, however, disagrees.

We have previously held that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997). As addressed above, the circuit court heard extensive testimony regarding the sexual abuse in question, including *in camera* testimony from the victim, S.R. Ultimately, the circuit court found that "[t]he child disclosed these acts [of petitioner's sexual abuse] to no fewer than three state officials," and that "[a]ll interviewing persons and entities, including the [circuit court], found the child to be credible." As such, the Court finds that there was sufficient evidence upon which the circuit court based its finding of sexual abuse, petitioner's contradictory evidence notwithstanding.

Further, we find no merit in petitioner's allegation that the circuit court made insufficient findings of fact in support of its determination that petitioner sexually abused S.R. In fact, in the adjudicatory order, the circuit court devoted almost two full pages to discussing its finding of petitioner's sexual abuse. This included a discussion of the lack of physical evidence regarding the abuse, a fact petitioner relies upon in arguing there was insufficient evidence to support the finding of sexual abuse. Additionally, in its dispositional order, the circuit court addressed petitioner's motion to reconsider adjudication, affirmed its prior adjudicatory order, and also "proceeded to supplement its prior order of adjudication with further findings as set forth on the record."[2] Simply put, the circuit court was in the best position to determine the credibility of the witnesses and did not err in failing to discuss evidence it deemed as lacking in credibility. As such, we find that the circuit court made sufficient findings to support adjudication of petitioner having sexually abused S.R.

For the foregoing reasons, we find no error in the decision of the circuit court and its June 18, 2013 order terminating petitioner's parental, custodial and guardianship rights to the children is hereby affirmed.

Affirmed.

**ISSUED**:  November 26, 2013

**CONCURRED IN BY**:
Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

---

[2] Petitioner did not include the dispositional hearing transcript in the appendix on appeal. Therefore the substance of these additional findings is unknown to the Court.

4